UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| DENISE ABREU, | Civil Action No. |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| NYU LANGONE HOSPITALS, individually and d/b/a "NYU HOSPITALS CENTER," and PETER RODNEY, individually, | Plaintiff Demands a Trial By Jury |
| Defendants. | |

------------------------------------------------------------------------X

Plaintiff, DENISE ABREU (hereinafter referred to as Plaintiff or "ABREU"), by her attorneys, DEREK SMITH LAW GROUP, PLLC, as and for her Complaint in this action against the Defendant NYU LANGONE HOSPITALS, individually and d/b/a "NYU HOSPITALS CENTER," (hereinafter referred to as "NYU"), and Defendant PETER RODNEY, individually (hereinafter referred to as "RODNEY"), (hereinafter collectively referred to as "the Defendants"), respectfully alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff brings this action, charging that the Defendants violated Plaintiff's rights pursuant to, *inter alia,* the New York State Human Rights Law; New York Executive Law, § 290, *et seq.* ("the Executive Law"); and the Administrative Code of the City of New York 8-107 *et seq.* ("NYCHRL"), seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination and sexual harassment, together with hostile work environment, retaliation, and unlawful termination by Defendants.

1

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332, because Plaintiff is a citizen of the State of Massachusetts, Defendants are all citizens of New York State, and the amount in controversy exceeds $75,000.00.

3. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

**PARTIES**

4. Plaintiff ABREU is an individual woman residing in the State of Massachusetts, County of Middlesex.

5. At all times material, Defendant NYU was, and still is, a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

6. At all times material, Defendant NYU operates medical centers in the State of New York.

7. At all times material, Defendant NYU employed Defendant RODNEY as a Senior Director. From October 2015 until the end of Plaintiff's employment, Defendant RODNEY held supervisory authority over Plaintiff and controlled many tangible aspects of Plaintiff's jobs duties, including holding the power to hire and fire Plaintiff. Defendant RODNEY is an individual male residing in New York.

8. Upon information and belief, at all times material, Defendant NYU meets the definition of an "employer" under all applicable state and local statutes.

9. At all times material, Defendant NYU employed Plaintiff as a Staff Nurse.

## MATERIAL FACTS

10. In or around November 2010, until in or around April 2013, Plaintiff ABREU worked at Mount Sinai Hospital with Defendant RODNEY. Throughout this time, Defendant RODNEY often sexually harassed Plaintiff ABREU by making unlawful, unwelcomed requests for sex and sexual favors.

11. Eventually, Defendant RODNEY left Mount Sinai Hospital and began working at Defendant NYU. Plaintiff ABREU eventually took over Defendant RODNEY's position at Mount Sinai Hospital.

12. In or around June 2015, Defendants offered Plaintiff ABREU a Staff Nurse position at Defendant NYU. Plaintiff ABREU accepted the position and started working at Defendant NYU.

13. During her time as a Staff Nurse, Plaintiff ABREU became the "Magnet Champion" and represented her unit at Defendant NYU when she attended a National Conference in Atlanta in or around September 2015. Defendant RODNEY attended this conference with Plaintiff and sexually harassed her, requesting to go back to her room. Plaintiff denied Defendant RODNEY's sexual advances.

14. In or around October 2015, a Clinical Coordinator position became open at Defendant NYU. Plaintiff ABREU reached out to Defendant NYU and applied for the position.

15. In or around October 2015, Defendant NYU informed Plaintiff ABREU that she was accepted for the position and was to start on or about November 30, 2015. Plaintiff accepted the offer but soon realized Defendant RODNEY only offered Plaintiff the job in order to sexually harass her.

16. Once Plaintiff ABREU started her position, Defendant RODNEY became her supervisor, controlling many tangible aspects of Plaintiff's job duties and holding the power to hire and fire Plaintiff.

17. In or around November 2015, Plaintiff ABREU attempted to report a work issue to her supervisor, Defendant RODNEY. Defendant RODNEY dismissed the claims with discriminatory remarks based on Plaintiff ABREU's gender, saying, "women are hormonal."

18. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

19. In or around December 2015, Defendant RODNEY told Plaintiff that he loved her and fantasized about being with her all the time. Defendant RODNEY's comments shocked and distressed Plaintiff.

20. Beginning in or around December 2015, Defendant RODNEY frequently entered Plaintiff's office and demanded sex. Defendant RODNEY would incessantly tell Plaintiff that he loved her. Defendant RODNEY also incessantly called Plaintiff outside of work hours, including during the weekends. Plaintiff was shocked and appalled by Defendant RODNEY's sexual harassment.

21. On an almost weekly basis, Defendant RODNEY came into Plaintiff ABREU's office, closed the door, and made unwelcome requests for sex. Defendant RODNEY routinely hugged Plaintiff and kissed her face. Plaintiff ABREU always pulled away from Defendant RODNEY, but Defendant RODNEY was unrelenting in his depraved sexual advances.

22. From around December 2015 until Plaintiff's employment with Defendant NYU ended, Defendant RODNEY frequently sexually assaulted Plaintiff ABREU. Defendant RODNEY repeatedly grabbed Plaintiff's buttocks and told her she was "fine."

23. During this period, Defendant RODNEY constantly told Plaintiff ABREU about his marital problems and his plans to leave his wife for Plaintiff. Plaintiff was horrified by Defendant RODNEY's egregious conduct and objected to his unwelcome sexual harassment.

24. In or around January 2016, Defendant RODNEY made several unlawful sexually harassing comments to Plaintiff ABREU, including telling her **"I would have a threesome with you,"** and **"I would eat you out."** Plaintiff ABREU was appalled and routinely objected to these unlawful and sexually harassing comments.

25. In or around February 2016, Defendant RODNEY invited Plaintiff ABREU to stay in his room at the office's upcoming Global Surgical Conference in April 2016. Defendant RODNEY booked a room with one bed for himself and Plaintiff for the conference, indicating that they would sleep in the same bed. Plaintiff objected to this and made it clear that she would not be sleeping with Defendant RODNEY.

26. In or around February 2016, Defendant RODNEY made several sexually harassing comments in reference to the conference. Defendant RODNEY indicated that he would have sex with Plaintiff while at the conference. Defendant RODNEY's sexually harassing comments terrified Plaintiff and subjected her to a hostile work environment.

27. In or around March 2016, Plaintiff ABREU cancelled her trip to the conference, because she was terrified she would be subjected to further sexual assaults and harassment from Defendant RODNEY.

28. In or around March 2016, shortly after Plaintiff ABREU informed Defendant RODNEY that she would not be attending the conference, Defendant RODNEY cornered Plaintiff in a staircase. As Plaintiff realized she had no path to escape, Defendant RODNEY again sexually assaulted Plaintiff. Defendant RODNEY forcibly kissed Plaintiff on the lips.

29. Defendants subjected Plaintiff to a hostile work environment.

30. In or around April 2016, Defendant RODNEY made several sexually harassing phone calls to Plaintiff ABREU outside of work hours. When Plaintiff ignored these harassing phone calls, Defendant RODNEY sent various texts to Plaintiff demanding that she answer his calls. Despite his threats, Plaintiff continued to ignore his harassing phone calls.

31. In or around April 2016, Defendant RODNEY sent sexually harassing text messages to Plaintiff. Moreover, when Plaintiff did not welcome and reciprocate these sexual advances, Defendant RODNEY became enraged and texted Plaintiff that "women let BS [*sic*] control their emotions."

32. Defendant RODNEY often demanded Plaintiff wait for him after work so they could ride the train together. In or around May 2016, Defendant RODNEY texted Plaintiff ABREU several times throughout the work day, demanding that Plaintiff meet him at the subway station.

33. Plaintiff met Defendant RODNEY at the subway station and Defendant RODNEY demanded they go to a nearby restaurant first. Afterwards, Plaintiff rode the train with Defendant RODNEY, and Defendant RODNEY exited at the same stop as Plaintiff. To Plaintiff's horror, Defendant RODNEY then followed Plaintiff to her home and invited himself inside.

34. Defendant RODNEY entered Plaintiff's home, her only sanctuary from Defendants regular sexual harassment. Leaving Plaintiff with nowhere to escape, Defendant RODNEY sexually assaulted Plaintiff once again. Defendant RODNEY forcibly kissed Plaintiff on the mouth, hugged her, and vigorously and repeatedly pressed his penis against Plaintiff. Defendant RODNEY demanded Plaintiff have sex with him, furthering his relentless campaign of sexual harassment. Plaintiff ABREU was humiliated and terrified to feel so powerless in her own home. Plaintiff again rejected Defendant RODNEY's unwelcomed requests for sex.

35. Defendants subjected Plaintiff to a hostile work environment.

36. In or around June 2016, shortly after Plaintiff ABREU rejected Defendant RODNEY's unwelcomed request for sex, Defendant RODNEY became increasingly hostile towards her at work. In fact, Defendant RODNEY began retaliating against Plaintiff for her opposition to his sexually harassing conduct.

37. On or about October 18, 2016, Defendants retaliated against Plaintiff ABREU for her opposition to Defendant RODNEY's sexually harassing conduct and gender discrimination. Defendant NYU's manager VICTORIA called Plaintiff in for a meeting regarding a "Performance Improvement Plan" (hereinafter "PIP") given to Plaintiff in response to her sexual harassment allegations against Defendant RODNEY. Plaintiff ABREU requested a meeting with Defendant NYU's Human Resources Department instead.

38. On or about October 19, 2016, Defendant RODNEY retaliated against Plaintiff ABREU for objecting to his constant unlawful sexual harassment and rejecting his sexual advances. Defendant RODNEY pressured Plaintiff ABREU to sign the PIP. Defendant RODNEY threatened to fire Plaintiff if she didn't sign the PIP and sent Plaintiff home.

39. On or about October 19, 2016, Plaintiff ABREU engaged in the protected activity of complaining of quid pro quo sexual harassment and retaliation to Defendant RODNEY, complaining that she was being given the PIP because she refused to have sex with Defendant RODNEY.

40. On or about October 20, 2016, Plaintiff ABREU met with Defendant NYU's Human Resources officer AUSTIN BENDER (hereinafter "BENDER") to discuss the hostile work environment to which Defendants subjected Plaintiff. To Plaintiff's dismay, instead of listening to her complaints of gender discrimination and sexual harassment, Defendants simply pressured Plaintiff to sign the PIP. Plaintiff refused.

41. On or about October 24, 2016, Plaintiff ABREU again met with BENDER to discuss the hostile work environment to which Defendant NYU subjected Plaintiff.

42. Defendants retaliated against Plaintiff for her complaints of gender discrimination and sexual harassment by placing her under heavy scrutiny and attempting to trump up a reason to fire Plaintiff.

43. On or about November 1, 2016, Defendant NYU terminated Plaintiff on the basis of her sex/gender and in retaliation for her complaints of sexual harassment and gender discrimination against Defendant RODNEY.

44. As a result of Defendant NYU's unlawful and discriminatory actions, Plaintiff ABREU became so physically and emotionally distressed that she is having difficulty eating and sleeping.

45. As a result of Defendant NYU's unlawful and discriminatory actions, Plaintiff ABREU has endured unwarranted professional humiliation resulting in extreme emotional distress, severe depression, and extreme anxiety.

46. As a result of Defendant NYU's unlawful and discriminatory actions, Plaintiff ABREU has endured unwarranted financial hardships and irreparable damage to her professional reputation.

47. As a result of the acts and conduct complained of herein, Plaintiff ABREU has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff ABREU has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

48. As Defendant NYU's actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff ABREU demands punitive damages against Defendant NYU.

49. The above are just some examples of the sexual harassment, unlawful discrimination, and retaliation to which Defendant NYU subjected Plaintiff ABREU.

50. Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of her gender and because she complained of or opposed the unlawful discriminatory and sexually harassing conduct of Defendants related to the above protected class.

51. Plaintiff seeks reinstatement.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (AGAINST ALL DEFENDANTS)

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

54. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff as set forth herein.

55. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296 including sex and gender.

56. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

"For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

59. Defendants engaged in an unlawful discriminatory practice by constructively discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

60. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

63. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

64. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

65. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### <u>FOR VIOLATIONS OF THE GENDER MOTIVATED VIOLENCE PREVENTION ACT (AGAINST DEFENDANT RODNEY)</u>

66. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

67. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

68. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

69. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

70. Defendant RODNEY's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

71. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

74. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against the Plaintiff as set forth herein.

75. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff because of her sex and gender.

76. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SIXTH CAUSE OF ACTION
### FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

79. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

80. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SEVENTH CAUSE OF ACTION
### FOR INTERFERENCE WITH PROTECTED RIGHTS UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere

with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

83. Defendants violated the section cited herein as set forth and Plaintiff suffered damages as a result.

### AS AN EIGHTH CAUSE OF ACTION FOR AIDING AND ABETTING UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

86. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

87. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   i. the employee or agent exercised managerial or supervisory responsibility; or

   ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

90. Defendants violated the section cited herein as set forth and Plaintiff suffered damages as a result.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:  New York, New York

   August 22, 2018

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC.**

Attorneys for Plaintiff


BY:   /s/ Ishan Dave
   Ishan Dave, Esq.
   *Attorneys for Plaintiff*
   1 Pennsylvania Plaza, 49th Floor
   New York, New York 10119
   (212) 587-0760